ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| JOSÉ J. COTTO RIVERA,<br><br>Recurrente,<br><br>v.<br><br>DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES,<br><br>Recurrida. | TA2025RA00117 | REVISIÓN procedente del Departamento de Recursos Naturales y Ambientales.<br><br>Caso núm.:<br>24-086-A.<br><br>Sobre:<br>denegatoria de la solicitud R-FA-FAD04-SJ-00594-20062023. |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 27 de octubre de 2025.

Este recurso trata de la revisión de la determinación del Departamento de Recursos Naturales y Ambientales (DRNA), que acogió la recomendación de la oficial examinadora designada y ordenó el archivo de la solicitud de renovación de franquicia instada por el recurrente, señor José J. Cotto Rivera (señor Cotto), por este no haber comparecido a la vista administrativa pautada por la oficial examinadora.

Evaluado el recurso y la oposición al mismo, a la luz del derecho aplicable, confirmamos la resolución objeto de revisión.

I

El señor Cotto contaba con una franquicia para la construcción de un pozo para extraer agua de un acuífero a nivel freático; ello, para uso doméstico[1]. Este pozo se construyó en una propiedad ubicada en la carretera PR-180, Barrio Playita, Sector Brisas de Playita, finca núm. 11-B, del Municipio de Salinas. El permiso correspondiente fue expedido por la

---

[1] Apuntamos que el proceso que describimos someramente se llevó a cabo al amparo de las disposiciones de la *Ley para la conservación, el desarrollo y uso de los recursos de agua en Puerto Rico*, Ley Núm. 136 de 3 de junio de 1976, según enmendada, 12 LPRA sec. 1115-1115v, y del Reglamento Núm. 6213 de 9 de octubre de 2000, intitulado *Reglamento para el aprovechamiento, uso, conservación y administración de las aguas en Puerto Rico*.

*Secretaría Auxiliar de Permisos, Endosos y Servicios Especializados* del DRNA (Secretaría Auxiliar) el 21 de marzo de 2022. El permiso tendría una vigencia de un año[2].

Posteriormente, y luego de realizados los trámites pertinentes, el 8 de junio de 2022, la Secretaría Auxiliar concedió al señor Cotto una franquicia de agua; ello, por el término de un año[3].

El 20 de junio de 2023, el señor Cotto presentó una solicitud de renovación de la franquicia con fines domésticos ante la Secretaría Auxiliar.

El 18 de septiembre de 2023, la Secretaría Auxiliar le requirió que gestionase el endoso del Municipio de Salinas, pues surgía de su solicitud que el señor Cotto interesaba instalar un *camper* en el terreno. Además, el Municipio debía acreditar la calidad del agua que sería extraída del pozo.

El 18 de enero de 2024, representantes del Municipio de Salinas y del DRNA sostuvieron una reunión para la discusión de la solicitud de renovación de la franquicia solicitada por el señor Cotto. Ello, a la luz de que el Municipio había aprobado la Ordenanza Municipal Núm. 7, Serie 2022-2023, la cual prohibía la instalación de un *trailer park* en las áreas identificadas como inundables; entre ellas, la del Sector Brisas de Playita.

El 19 de enero de 2024, la solicitud del señor Cotto fue referida a la Oficina de Ordenamiento Territorial del Municipio de Salinas para su evaluación.

El 9 de febrero de 2024, la Oficina de Ordenamiento Territorial emitió sus comentarios, por conducto de su director, el señor José C. Collazo Machado (señor Collazo). En ella, el señor Collazo consignó que el Sector Brisas de Playita trataba de una finca sin segregar, que estaba siendo ocupada por varias personas, quienes carecían de título y sin contar con el permiso de segregación correspondiente. Así pues, concluyó que esos hechos impedían la concesión de permisos de construcción (incluido el permiso de construcción de un pozo para la extracción de agua).

---

[2] *Véase*, Exhibit V del recurso de revisión.

[3] *Véase*, Anejo I de la oposición al recurso.

En fin, la carta del señor Collazo constituyó la objeción fundamentada del Municipio de Salinas a la solicitud de renovación de franquicia del señor Cotto.

El 20 de febrero de 2024, la entonces secretaria del DRNA emitió la denegatoria de la franquicia[4]. El documento apercibía al señor Cotto de su derecho a solicitar la reconsideración de la determinación y la celebración de una vista administrativa, en un término de 30 días, computado a partir de la denegatoria.

El 19 de marzo de 2024, el señor Cotto presentó una solicitud de vista administrativa por conducto de su representante legal[5].

El 15 de abril de 2024, la oficial examinadora designada por la agencia emitió una *Notificación de Vista*, en la que, entre otras cosas, dispuso para la celebración de una conferencia entre las partes para el **8 de mayo de 2024**, y la vista en su fondo para el **28 de mayo de 2024**. Destacamos que, en esa notificación, la oficial examinadora estableció claramente que la vista a celebrarse era de **naturaleza cuasi judicial, y que el peso de la prueba lo tendría la parte promovente**. Además, **apercibió al señor Cotto de que la incomparecencia injustificada a la vista constituiría causa suficiente para decretar la desestimación de su solicitud por falta de interés**[6].

Luego de varios trámites, el **28 de mayo de 2024**, las partes comparecieron a la vista en su fondo citada. En esa ocasión, el señor Cotto compareció personalmente; no obstante, su abogado informó que llegaría más tarde, pues se había retrasado en una vista que se celebraba en el Centro Judicial de Caguas. El representante del interés público designado por la agencia, Lcdo. José Báez Martínez-Radio (Lcdo. Báez), no tuvo

---

[4] *Véase*, Anejo II de la oposición al recurso. Los hechos relatados por este Tribunal surgen de las determinaciones de hechos consignadas por la secretaria del DRNA en su denegatoria.

[5] *Véase*, Exhibit VII del apéndice del recurso.

[6] *Véase*, Anejo III de la oposición al recurso.

reparos en que la vista fuera re señalada; particularmente, a la luz de que interesaba que se citara a un funcionario del Municipio de Salinas.

El **30 de mayo de 2024**, la oficial examinadora suscribió una resolución en la que consignó lo acontecido en la vista del 28 de mayo de 2024, y citó a una nueva vista en su fondo para el **19 de septiembre de 2024**. Además, conforme fuera solicitado por el Lcdo. Báez, ordenó la comparecencia del señor Collazo, director de la Oficina de Ordenamiento Territorial del Municipio de Salinas[7].

Llegado el 19 de septiembre de 2024, el señor Cotto y su representante legal comparecieron. También, el Lcdo. Báez y el director de la Oficina de Permisos y Franquicias de la agencia. El señor Collazo no compareció, por lo que el Lcdo. Báez solicitó que este fuera citado formalmente y, por tanto, que la vista en su fondo fuera suspendida.

El 25 de septiembre de 2024, notificada el 30 de septiembre, la oficial examinadora emitió una nueva orden. En ella, consignó lo acontecido el 19 de septiembre de 2024, y señaló la vista en su fondo para el **11 de febrero de 2025**. En cuanto al señor Collazo, ordenó que la Secretaría Auxiliar le citara personalmente[8].

El **11 de febrero de 2025**, comparecieron a la vista el representante del interés público designado por el DRNA, Lcdo. Báez, y sus testigos: el director de la Oficina de Permisos y Franquicias de Aguas del DRNA, y el director de la Oficina de Ordenamiento Territorial de Salinas, señor Collazo. **El señor Cotto no compareció, tampoco su abogado, y sus incomparecencias no fueron justificadas**.

---

[7] *Véase*, Anejo V de la oposición al recurso.

[8] *Íd.*, Anejo VI. Copia de esta orden fue notificada a las partes; en particular, al señor Cotto, por conducto de su representante legal. En su recurso, el abogado del señor Cotto, Lcdo. Cotto Luna, se limitó a aducir que el sobre que recibió del DRNA sí fue recibido, pero estaba vacío; no consta que hubiera intentado averiguar qué contenía el sobre. Sí está claro que, desde la vista celebrada el 19 de septiembre de 2024, hasta el presunto recibo de un sobre vacío, ni el señor Cotto ni su abogado realizaron gestión alguna para conocer el estatus del nuevo señalamiento. Es decir, transcurridos más de cuatro meses, la parte con interés en el proceso no procuró verificar en qué fecha se celebraría la vista; ello, a pesar de que la oficial examinadora había actuado de manera diligente y puntual durante todo el proceso ante ella.

El **13 de febrero de 2025**, la oficial examinadora rindió su recomendación al secretario del DRNA[9]. Hizo un recuento de lo acontecido en el caso y, **a la luz de la incomparecencia injustificada del promovente señor Cotto a la vista en su fondo, recomendó la desestimación y archivo** de la solicitud de renovación de franquicia.

El **16 de mayo de 2025**, notificada el 19 de mayo, el secretario del DRNA acogió la recomendación de la oficial examinadora y ordenó el archivo del caso, con lo cual sostuvo la determinación de denegar la solicitud de renovación de franquicia del señor Cotto.

El **9 de junio de 2025**, el señor Cotto solicitó la reconsideración de la determinación; no obstante, esta no fue atendida por la agencia.

El **24 de julio de 2025**, el señor Cotto instó este recurso, en el que apuntó la comisión del siguiente error, el cual se transcribe íntegramente:

> Erró el honorable Departamento de Recursos Naturales y Ambientales al decretar el archivo de la Solicitud interpuesta ante su consideración por el recurrente omitiendo o ignorando las disposiciones de sus propios Reglamentos, de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, privándole de esa manera de un Debido Proceso de Ley.

(Énfasis omitido).

En síntesis, el señor Cotto aduce que el DRNA violentó su propio reglamento adjudicativo[10], así como las disposiciones pertinentes de la Ley Núm. 38-2017, según enmendada, intitulada *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601, *et seq.*, que disponen que, previo a la drástica sanción de la desestimación de una querella y, en este caso, de una solicitud de franquicia, la agencia está obligada a, en primer lugar, emitir una orden de mostrar causa para el incumplimiento; en segundo lugar, sancionar al abogado o a la parte, con notificación directa a esta última; y, de tales medidas resultar infructuosas, proceder a la desestimación de la acción.

---

[9] *Véase*, Exhibit II del apéndice del recurso.

[10] Se refiere al Reglamento Núm. 6442 de 26 de abril de 2002, intitulado *Reglamento de Procedimientos Administrativos del Departamento de Recursos Naturales y Ambientales* (Reglamento Núm. 6442).

Por su parte, el 29 de septiembre de 2025, el DRNA compareció por conducto de la Oficina del Procurador General de Puerto Rico. En su escrito, además de oponerse a los méritos del recurso, solicitó su desestimación por falta de notificación oportuna de copia del escrito de revisión. Evaluada la solicitud de desestimación, concedimos al señor Cotto un término para que expusiera su posición. Así lo hizo el 14 de octubre de 2025.

Debemos apuntar que, inicialmente, allá para el 30 de julio de 2025, el abogado del señor Cotto informó que, el último día hábil para presentar el escrito de revisión (24 de julio de 2025), confrontó problemas técnicos para cargar el recurso al *Sistema de Manejo y Administración de Casos del Tribunal de Apelaciones* (SUMAC TA), por lo que, a eso de las 8:00 pm, optó por intentar presentar el recurso en el buzón de presentaciones de este Tribunal, el cual se encontraba cerrado. A través de un guardia de seguridad que se comunicó con una funcionaria de Secretaría, se le autorizó a presentar el recurso, que fue ponchado a las 8:40 pm[11].

Previo a ello, el abogado del señor Cotto había notificado por correo electrónico copia del escrito al abogado del interés público, Lcdo. Báez. En cuanto a la agencia y a la oficial examinadora, así como al Lcdo. Báez, les notificó copia del recurso el sábado, 26 de julio de 2024; es decir, fuera del término que tenía para ello.

En su solicitud de desestimación, el DRNA nos llama la atención al hecho de que la notificación se hizo fuera del término de estricto cumplimiento de 30 días y que la notificación realizada por correo electrónico al Lcdo. Báez el 24 de julio de 2025, no se podía considerar como la notificación adecuada a la agencia, pues dicho abogado era el abogado del interés público; no era el representante oficial de la agencia recurrida.

---

[11] A la luz de las explicaciones esbozadas por el abogado del señor Cotto, mediante nuestra *Resolución* del 26 de agosto de 2025, dimos por presentado oportunamente el recurso. Nada dispusimos en cuanto a la notificación a las recurridas.

En su oposición a la solicitud de desestimación presentada el 14 de octubre de 2025, el abogado del señor Cotto hizo un recuento, nuevamente, de los problemas confrontados con el SUMAC TA el último día hábil para presentar el recurso. Añadió que, el 25 de julio de 2025, fue feriado, así que tuvo que notificar a la parte recurrida el sábado, 26 de julio de 2025, por correo certificado.

Aceptamos las excusas articuladas por el abogado del señor Cotto para incumplir con los términos reglamentarios de estricto cumplimiento, por lo que **denegamos la solicitud de desestimación del DRNA**. Optamos por atenernos a lo dispuesto en la Regla 2(3) de nuestro Reglamento, que nos impone la obligación de implantar el principio rector de que las controversias judiciales se atiendan en sus méritos y no se desestimen los recursos por defectos de forma o de notificación que no afecten los derechos de las partes. *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 1, 215 DPR ____ (2025)

Precisamente en cuanto a los méritos del recurso, la posición asumida por el DRNA es que, ante la incomparecencia del señor Cotto y de su representante legal a la vista en su fondo del 11 de febrero de 2025, tanto el Reglamento Núm. 6442 de 26 de abril de 2002, intitulado *Reglamento de Procedimientos Administrativos del Departamento de Recursos Naturales y Ambientales* (Reglamento Núm. 6442), como el apercibimiento contenido en la citación a la vista, justificaban que la oficial examinadora recomendara, y el secretario del DRNA así la acogiera, la desestimación de la solicitud del señor Cotto.

Evaluados los sendos escritos de las partes comparecientes, concluimos que le asiste la razón a la parte recurrida, por lo que confirmamos la resolución objeto de controversia. Veamos.

II

A

Ley Núm. 38-2017, según enmendada, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), así como

el Reglamento 6442 del DRNA, regulan las medidas que pueden tomar las agencias en el descargo de sus funciones adjudicativas formales.

Por un lado, la Sec. 3.21 de la LPAUG, 3 LPRA sec. 9661, dispone para la imposición progresiva de sanciones[12], en aquellos casos en que una parte promovente incumpla con las órdenes de la agencia concernida. Es decir, en su función cuasi judicial, la agencia "**podrá imponer sanciones**" en los siguientes casos:

> (a) Si el promovente de una acción, o el promovido por ella, dejare de cumplir con las reglas y reglamentos o con cualquier orden del jefe de la agencia, del juez administrativo o del oficial examinador, la agencia a iniciativa propia o a instancia de parte podrá ordenarles que muestra causa por la cual no deba imponérsele una sanción. La orden informará de las reglas, reglamentos u órdenes con las cuales no se haya cumplido, y se concederá un término de veinte (20) días, contados a partir de la fecha de notificación de la orden, para la mostración de causa. De no cumplirse con esa orden, o de determinarse que no hubo causa que justificare el incumplimiento, entonces se podrá imponer una sanción económica a favor de la agencia o de cualquier parte, que no excederá de doscientos (200) dólares por cada imposición separada, a la parte o a su abogado, si este último es el responsable del incumplimiento.

> (b) Ordenar la desestimación de la acción en el caso del promovente, o eliminar las alegaciones del promovido, si después de haber impuesto sanciones económicas y de haberlas notificado a la parte correspondiente, dicha parte continúa en su incumplimiento de las órdenes de la agencia.
>
> .     .     .     .     .     .     .     .     .

3 LPRA sec. 9661.

Nótese que esta Sección se refiere a la imposición de sanciones; no a la desestimación por razón de la incomparecencia a una vista adjudicativa formal, cuyo promovente simple y llanamente, no comparece.

Una regla análoga está consignada en el Reglamento Núm. 6442 del DRNA, el cual rige los procedimientos adjudicativos formales ante sí. En cuanto a las **sanciones a imponerse** a una parte, la Regla 39 dispone:

> .     .     .     .     .     .     .     .     .

> (1) Si el promovente de una acción, o el promovido por ella, dejare de cumplir con las reglas y reglamentos o con cualquier orden del Jefe de la Agencia, del Juez

---

[12] Ello, de manera similar a como lee la Regla 39.2(a) de las de Procedimiento Civil, 32 LPRA Ap. V.

Administrativo o del oficial examinador, la Agencia a iniciativa propia o a instancia de parte, podrá ordenarle que muestra causa por la cual no debe imponérsele una sanción económica a favor de la Agencia o de cualquier parte, que no excederá de doscientos ($200) [*sic*] dólares por cada imposición separada, a la parte o a su abogado, si este último es el responsable del incumplimiento.

(2) Ordenar la desestimación de la acción en el caso del promovente, o eliminar las alegaciones en el caso del promovido, si después de haber impuesto sanciones económicas y de haberlas notificado a la parte correspondiente, dicha parte continúa en su incumplimiento de las órdenes de la Agencia.

Al igual que la Sec. 3.21 de la LPAUG, la citada Regla 39 lo que atiende es la imposición de sanciones progresivas a la parte promovente, o a su abogado, **cuando la conducta que exhibe durante el proceso entorpece el procedimiento administrativo**. Al igual que sucede con la Regla 39.2(a) de las de Procedimiento Civil análoga, ambas disposiciones lo que establecen es la facultad discrecional del funcionario adjudicador para imponer sanciones económicas a las partes, así como para desestimar una querella o eliminar las alegaciones, cuando no se ha cumplido con las referidas Reglas o con cualquier orden emitida por la agencia.

Tal cual ha consignado el Tribunal Supremo de Puerto Rico con relación a la Regla 39.2(a) de Procedimiento Civil, 32 LPRA Ap. V, si un tribunal estima que las actuaciones de una parte involucrada en un pleito están entorpeciendo los procedimientos, tiene amplia facultad para prohibir, sancionar o castigar este tipo de conducta o actitud. *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 930 (1996)[13]. De hecho, el Tribunal Supremo ha expresado que, a pesar de que la sanción de desestimación por falta de diligencia no se favorece, será una sanción justa y correcta en aquellos casos extremos de clara e injustificada falta de diligencia. *Sánchez Rodríguez v.Adm. de Corrección*, 177 DPR 714, 724 (2009); *Dávila Mundo v. Hospital San Miguel*, 117 DPR 807 (1986). En fin,

---

[13] Ello responde al hecho de que, "[c]omo regla general, los tribunales están obligados a desalentar la práctica de falta de diligencia e incumplimiento con las órdenes del tribunal mediante su efectiva, pronta y oportuna intervención". *Mejías et als. v. Carrasquillo et als.*, 185 DPR 288, 298 (2012).

si bien la política judicial de que los casos se ventilen en los méritos limita la discreción del tribunal, el Tribunal Supremo también ha reconocido que "una parte no tiene derecho a que su caso tenga vida eterna en los tribunales, manteniendo así a la otra parte en constante estado de incertidumbre". *Colón Rivera v. Wyeth Pharm.,* 184 DPR 184, 202-203 (2012); *Carattini v. Collazo Syst. Analysis, Inc.,* 158 DPR 345, 369 (2003). Es decir, se debe tomar en consideración el efecto de la demora en la resolución de los pleitos en los tribunales y el efecto adverso que puede tener en la administración de la justicia. *Colón Rivera v. Wyeth Pharm.*, 184 DPR, a la pág. 203.

B

En su discusión, la parte recurrente obvia por completo la naturaleza del procedimiento que él mismo inició, al cual le aplica el Reglamento Núm. 6213 de 9 de octubre de 2000, *Reglamento para el aprovechamiento, uso, conservación y administración de las aguas de Puerto Rico* (Reglamento 6213).

Ante su obligación de renovar la franquicia para el uso de aguas y ante la denegatoria de tal renovación, el señor Cotto inició el proceso administrativo conforme al Art. 8.22 del Reglamento Núm. 6213; es decir, mediante la solicitud de la celebración de una vista administrativa. En esa vista administrativa, el Art. 13.2.1 del Reglamento Núm. 6213 dispone que se garantizarán los siguientes derechos:

> A los efectos de este reglamento[,] se entenderá que las vistas administrativas serán aquellas de carácter cuasi-judicial en las cuales las personas afectadas o partes tendrán derecho a:
>
> a. Que se les notifique personalmente o por correo certificado con acuse de recibo sobre el procedimiento a celebrarse y se les informen los hechos que dan base al mismo con no menos de quince (15) días de antelación a la fecha para la vista administrativa.
>
> b. Comparecer personalmente o representada por abogado y con el auxilio técnico que estime necesario.
>
> c. Declarar y presentar evidencia oral y documental.
>
> d. Interrogar y contra interrogar testigos.

e. Que se ordene la comparecencia de testigos y la presentación de evidencia.

f. Que se prepare un expediente taquigráfico de la vista administrativa o expediente equivalente.

g. Que la decisión se tome sólo a base de la prueba que desfile en la vista administrativa.

h. Que la vista administrativa sea pública a menos que renuncien a este derecho.

i. Que las personas involucradas en la investigación que da lugar al procedimiento no sean designadas como oficiales examinadores de la vista administrativa.

j. Que todo escrito de cualquier índole que se radique en o se expida por el Departamento en relación con un procedimiento de vista administrativa, sea notificado a todas las partes involucradas en el mismo. Prueba o constancia de que se ha hecho dicha notificación se remitirá al Departamento de acuerdo a las disposiciones de la sección 3.14 de este reglamento.

De igual forma, a los hechos de este recurso le aplica la LPAUG, en su Sec. 3.9, sobre **notificación de vista**, la cual dispone como sigue:

La agencia notificará por escrito a todas las partes o a sus representantes autorizados e interventores la fecha, hora y lugar en que se celebrará la vista adjudicativa. La notificación se deberá efectuar por correo, ordinario o electrónico, o personalmente con no menos de quince (15) días de anticipación a la fecha de la vista, excepto que, por causa debidamente justificada consignada en la notificación, sea necesario acortar dicho período, y deberá contener la siguiente información:

(a) Fecha, hora y lugar en que se celebrará la vista, así como su naturaleza y propósito.

(b) Advertencia de que las partes podrán comparecer por derecho propio, o asistidas de abogados incluyendo los casos de corporaciones y sociedades.

(c) Cita de la disposición legal o reglamentaria que autoriza la celebración de la vista.

(d) Referencia a las disposiciones legales o reglamentarias presuntamente infringidas, si se impugna una infracción a las mismas, y a los hechos constitutivos de tal infracción.

(e) **Apercibimiento de las medidas que la agencia podrá tomar si una parte no comparece a la vista**.

(f) **Advertencia de que la vista no podrá ser suspendida**.

3 LPRA sec. 9649. (Énfasis nuestro).

Se trata de que, una vez pautada la vista solicitada por la parte promovente, y habiendo sido debidamente apercibido de las

consecuencias de no comparecer a la misma, la agencia tiene la facultad de actuar conforme a su apercibimiento previo.

III

La contención del recurrente señor Cotto es que la agencia debió aplicar las sanciones progresivas que dispone tanto el Art. 39 del Reglamento Núm. 6442, como la Sec. 3.21 de la LPAUG. En otras palabras, que, ante su ausencia injustificada a la vista citada, lo primero que tenía que ordenar la oficial examinadora era que el recurrente mostrara causa, se le impusiera una sanción, se le concediera un término, y solo entonces, de no prosperar esas sanciones, proceder a recomendar la desestimación y archivo de la acción administrativa.

Lo que nunca menciona el señor Cotto es que la oficial examinadora le había apercibido de las consecuencias de ausentarse a la vista.

Conforme detallamos en el tracto procesal del caso ante la agencia, el 15 de abril de 2024, la oficial examinadora emitió su primera *Notificación de Vista*, en la que, entre otras cosas, dispuso para la celebración de una conferencia entre las partes para el **8 de mayo de 2024**, y la vista en su fondo para el **28 de mayo de 2024**.

En esa notificación, la oficial examinadora estableció claramente que la vista a celebrarse era de **naturaleza cuasi judicial, y que el peso de la prueba lo tendría la parte promovente**. Además, **apercibió al señor Cotto de que la incomparecencia injustificada a la vista constituiría causa suficiente para decretar la desestimación de su solicitud por falta de interés**[14].

El **28 de mayo de 2024**, las partes comparecieron a la vista en su fondo. En esa ocasión, el señor Cotto compareció personalmente; no obstante, su abogado informó que llegaría más tarde, pues se había retrasado en una vista que se celebraba en el Centro Judicial de Caguas. El Lcdo. Báez no tuvo reparos en que la vista fuera re señalada;

---

[14] *Véase*, Anejo III de la oposición al recurso. Como bien señala el DRNA en su oposición, el señor Cotto no adjuntó al apéndice de su recurso una copia de las citaciones a las vistas. Estas sí fueron presentadas por el DRNA con su oposición al recurso, como Anejos II, III, V y VI.

particularmente, a la luz de que interesaba que se citara a un funcionario del Municipio de Salinas.

El **30 de mayo de 2024**, la oficial examinadora suscribió otra resolución en la que consignó lo acontecido en la vista del 28 de mayo de 2024, y citó a una nueva vista en su fondo para el **19 de septiembre de 2024**. Además, conforme fuera solicitado por el Lcdo. Báez, ordenó la comparecencia del señor Collazo, director de la Oficina de Ordenamiento Territorial del Municipio de Salinas[15].

Llegado el 19 de septiembre de 2024, el señor Cotto y su representante legal comparecieron. También, el Lcdo. Báez y el director de la Oficina de Permisos y Franquicias de la agencia. El señor Collazo no compareció, por lo que el Lcdo. Báez solicitó que este fuera citado formalmente y, por tanto, que la vista en su fondo fuera suspendida.

El **25 de septiembre de 2024, notificada el 30 de septiembre**, la oficial examinadora emitió una nueva orden. En ella, consignó lo acontecido el 19 de septiembre de 2024, y señaló la vista en su fondo para el **11 de febrero de 2025**[16].

Esta es la citación a vista que, según aducido por el abogado del señor Cotto, supuestamente no le fue notificada; es decir, que, si bien recibió un sobre del DRNA, este estaba vacío. En el supuesto de que esto hubiera ocurrido cual narrado, el abogado del señor Cotto no se tomó la molestia de averiguar qué contenía el sobre. Ello, aun cuando conocía que, desde la vista celebrada el 19 de septiembre de 2024, aún no había recibido la nueva citación a la vista.

Es decir, desde el 19 de septiembre de 2024, hasta el presunto recibo del sobre vacío, ni el señor Cotto ni su abogado realizaron gestión alguna para conocer el estatus del nuevo señalamiento. Como indicamos, transcurridos más de cuatro meses, la parte con interés en el proceso no procuró verificar en qué fecha se celebraría la vista; ello, a pesar de que el

---

[15] *Véase*, Anejo V de la oposición al recurso.

[16] *Íd.*, Anejo VI.

récord refleja que la oficial examinadora había sido consecuente y diligente en la tramitación del proceso y en la citación a las vistas pautadas.

Ante la inacción del señor Cotto y de su abogado, el **11 de febrero de 2025**, solo comparecieron a la vista el Lcdo. Báez y sus testigos. **El señor Cotto no compareció, tampoco su abogado, y sus incomparecencias no fueron justificadas**.

Por tanto, el **13 de febrero de 2025**, la oficial examinadora rindió su recomendación al secretario del DRNA[17] y, luego de hacer un recuento de lo acontecido en el caso y, a la luz de la incomparecencia injustificada del promovente señor Cotto a la vista en su fondo, recomendó la desestimación y archivo de la solicitud de renovación de franquicia.

El **16 de mayo de 2025**, notificada el 19 de mayo, el secretario del DRNA acogió la recomendación de la oficial examinadora y ordenó el archivo del caso, con lo cual sostuvo la determinación de denegar la solicitud de renovación de franquicia del señor Cotto.

Esta conclusión del proceso estaba avalada tanto por el apercibimiento hecho al señor Cotto por la oficial examinadora, como por lo dispuesto en la Sec. 3.9 de la LPAUG, 3 LPRA sec. 9649.

A su vez, este Tribunal concluye que la agencia no abusó de su discreción y que la resolución que desestimó la solicitud del señor Cotto y el archivo de su caso estaba plenamente justificada. El error imputado a la agencia por el señor Cotto no se cometió.

IV

En mérito de lo antes expuesto, este Tribunal confirma la resolución recurrida.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones

---

[17] *Véase*, Exhibit II del apéndice del recurso.